UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
PEGASO DEVELOPMENT INC.,                    :

                             Plaintiff,          :

                    v.                              :

MORIAH EDUCATION MANAGEMENT :
LP AND MORIAH SOFTWARE
MANAGEMENT LP,                              :

                     Defendants.    :
-------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

**MEMORANDUM AND ORDER**

19-CV-7787 (AT) (KNF)

       Plaintiff Pegaso Development Inc. ("Pegaso") commenced this action against defendants

Moriah Education Management LP and Moriah Software Management LP asserting: (1) Count I,

Moriah Education Management LP's breach of the 2016 promissory note; and (2) Count II,

Moriah Software Management LP's breach of the 2017 promissory note.  Moriah Education

Management LLC, "incorrectly identified as Moriah Education Management LP," and Moriah

Software Management LP answered the complaint.  Count II was dismissed with prejudice.

Docket Entry No. 45.  A judgment was entered in favor of the plaintiff and against Moriah

Education Management LP and Moriah Education Management, LLC "(collectively,

'Debtors')," "as to Count I of the complaint," finding the debtors liable to the plaintiff, "jointly

and severally, in the amount of $2,758,567.13 plus any interest that has accrued and will accrue

each day following March 17, 2020."  Docket Entry No. 46.  Before the Court is the plaintiff's

motion for turnover order, "pursuant to Fed. R. Civ. P. 69 and its application of New York Civil

Practice Law and Rules ('CPLR') §§ 5201, 5222, 5225(a) and (c)."  The debtors oppose the

motion.

## PLAINTIFF'S CONTENTIONS

The plaintiff asserts that, in its answer to the complaint, Moriah Education Management LP identified itself as Moriah Education Management LLC, and for the purpose of the motion, the plaintiff refers to these entities "collectively" as "MEM."  During pre-judgment discovery, the plaintiff served a subpoena on AnswerNet Education Services, Inc. ("AnswerNet"), which produced: (i) a "Senior Secured Convertible Promissory Note" in favor of "MEM" in the amount of $450,000 plus interest accruing at an annual rate of five percent with a maturity date of December 31, 2020; and (ii) an amendment to the promissory note by which the principal increased to $490,000.  The plaintiff asserts that "MEM" is in possession of the promissory note. The plaintiff attempted to serve personally a restraining notice, pursuant to CPLR § 5222, on "MEM's" principal Greg Zilberstein ("Zilberstein"), but he refused to accept service.  The plaintiff maintains that "MEM" should not transfer or dispose of the funds received from AnswerNet.  According to the plaintiff, the AnswerNet promissory note grants "MEM" power to assign or transfer it, and it is available to the plaintiff pursuant to CPLR §§ 5201(b) and 5225(a). The plaintiff seeks a turnover order

> (a) directing MEM to turn over to Pegaso all of its rights with respect to the AnswerNet Note through an assignment of the AnswerNet Note to Pegaso;
> (b) directing MEM to execute and deliver to Pegaso all documents necessary to effectuate the turnover of the AnswerNet Note through an assignment in partial satisfaction of the Judgment, i.e., the outstanding balance on the Judgment should be reduced only by sums actually paid to Pegaso after the AnswerNet Note is assigned to Pegaso;  [and]
> (c) if the balance of the AnswerNet Note is paid, directing MEM to turn over to Pegaso all of the funds paid to MEM.

Attached to the plaintiff's memorandum of law are Exhibit A, "2/5/20 Subpoena" the plaintiff served on AnswerNet, Exhibit B, AnswerNet's "12/15/17 Promissory Note," Exhibit C, "an

email memorializing an amendment to the 12/15/17 Promissory Note," Exhibit D, "Restraining

Notice," and Exhibit E, "UCC Filing Search."

### DEBTORS' CONTENTIONS

In opposition to the motion, Moriah Education Management LP submitted its

memorandum of law, in which it asserts that "Defendant Moriah Education Management LP and

Moriah Education Management LLC (collectively "MEM" or "Defendant") respectfully submits

[sic] this memorandum of law in opposition to the motion of plaintiff Pegaso Development, Inc."

The debtors argue that "the turnover motion should be denied as moot" because "MEM has

advised Plaintiff, AnswerNet has paid off the outstanding principal balance of the Note of

approximately $400,000, and MEM stands prepared to transfer $250,000 of those funds to

Pegaso toward payment of the Judgment." The debtors assert:

> The remaining $150,000 of the funds received on the Note has been used to pay
> advanced retainer fees of $50,000 to Spiro Harrison, the undersigned counsel, for
> MEM, its general partner Black Dolphin Capital Management, LLC ("Black
> Dolphin"), and Black Dolphin's member Greg Zilberstein. The retainers on behalf
> of Black Dolphin and Zilberstein are indemnified by MEM pursuant to MEM's
> agreement with its investors.

The retainer fees were advanced "to defend MEM" when Spiro Harrison was retained as counsel

for "MEM" after the judgment and because "MEM" is without resources to defend. Since

advance retainer fees are proper, the balance of $250,000 from the promissory note proceeds is

available to pay the judgment. The debtors request "that the Court confirm that the advanced

payment retainers paid here were appropriate, or, in the alternative, require the parties to provide

separate briefing on that issue."

In support of the opposition, the debtors submitted a declaration by their counsel, David

B. Harrison ("Harrison"), with Exhibit A, "the restraining notices," Exhibit B, "the information

subpoena," Exhibit C, "the restraining notice and information subpoena to Black Dolphin,"

Exhibit D, "the restraining notice and information subpoena to Zilberstein," and Exhibit E, "the

Subscription Agreement."  Harrison states that he has "personal knowledge of the facts and

circumstances set forth" in his declaration.  Harrison is "a partner with Spiro Harrison, counsel

for defendant Moriah Education Management LP and Moriah Education Management LLC

('MEM' or 'Defendant')."  Harrison states:

> As part of Spiro Harrison's engagement on this matter, each of MEM, Black Dolphin, and Zilberstein agreed to pay Spiro Harrison an advanced retainer fee of $50,000.  The total $150,000 was paid by MEM from the proceeds of a December 2017 Senior Secured Convertible Note (the 'Note') given by AnswerNet Education Services, Inc. ('AnswerNet') to MEM, the principal balance of which AnswerNet recently paid off.

Harrison states that "[t]he balance of the proceeds of AnswerNet's payoff of the Note,

approximately $250,000 was placed in Spiro Harrison's trust account for safeguarding."

According to Harrison, "[t]he letter of engagement states, in relevant part:

> Before the Firm begins work on the matter, the firm requires payment by you of an advance payment retainer.  The advanced payment retainer in the amount of $150,000.00 shall be paid by MEM for work on its behalf ($50,000) as well as that of Greg Zilberstein ($50,000) and [Black Dolphin] ($50,000) as advances in furtherance of its indemnification obligations . . . .  An "advance payment retainer" is recognized and approved under New Jersey law as a present payment by the Client to the Firm in exchange for the Firm's commitment to provide legal services to the Client.  Ownership of this sum passes to the Firm immediately upon receipt of the Client's advance payment retainer, and therefore the funds will not be held in the Firm trust account.  The Firm will deposit the funds in the Firm's operating account.

Harrison contends that

> MEM paid the retainer fees on behalf of Black Dolphin and Zilberstein pursuant to its indemnification obligations as agreed upon with MEM's investors. Specifically, the Subscription Agreement signed by each investor provided, in relevant part, that "the General Partner and certain of its affiliates shall be indemnified against and shall not be liable for any loss or liability incurred in connection with the affairs of the Company . . . ."   A true and correct copy of the Subscription Agreement is attached hereto as Exhibit E.

4

According to Harrison,

> On June 17, 2020, I advised Plaintiff's counsel by phone that AnswerNet had paid off $400,000 in outstanding principal on the Note. I further advised that MEM was prepared to transfer immediately $250,000 of those funds to Pegaso in satisfaction of its April 13, 2020 stipulated judgment against MEM. The remaining $150,000 of the funds received on the Note, I informed counsel, had been used to pay advanced retainer fees of $50,000 each to Spiro Harrison for MEM, Black Dolphin, and Zilberstein. Plaintiff has not yet provided wiring instructions for the transfer of the $250,000 payment.

## PLAINTIFF'S REPLY

The plaintiff asserts that "MEM avers in its Opposition that it is prepared to transfer $250,000 of the AnswerNet Note proceeds to Pegaso toward payment of the Judgment." Thus, the motion should be granted with respect to $250,000. The plaintiff contends that it "is evaluating the possibility of filing motions contesting the validity of the liquidation and subsequent handling of the proceeds pursuant to fraudulent transfer and/or other theories." With respect to the remaining $150,000, the plaintiff asserts:

> MEM's Opposition and events taking place before and after the filing of Pegaso's Motion raise serious issues as to the propriety of MEM's handling of the $150,000 as well. Myriad elements of MEM's position lack any factual support, including most predominantly: (1) the circumstances underlying the liquidation of the AnswerNet Note; and (2) the transfer of the AnswerNet funds to Spiro Harrison. Accordingly, Pegaso seeks discovery on these issues. Pegaso respectfully requests that this Court: (1) enter and continue the remainder of Pegaso's Motion with respect to the $150,000 in purported advance payment retainers for a period of 60 days in order for Pegaso to conduct necessary discovery regarding the liquidation of the AnswerNet Note and the transfer of funds to Spiro Harrison; and (2) order that the $150,000 at issue be held in escrow pending final resolution of the instant turnover motion. If Pegaso files a fraudulent transfer motion, Pegaso will also move for any additional prophylactic measures that may be necessary to shield its interests.

Concerning "the propriety of MEM's handling of the AnswerNet Note," the plaintiff argues:

> The circumstances surrounding liquidation of the AnswerNet Note are suspicious. In the month prior to the liquidation of that note, Pegaso had been trying unsuccessfully to serve MEM through its former counsel and personally through

5

Mr. Zilberstein with a restraining notice and information subpoena as to that Note (and other potential assets). On the day it filed the Turnover Motion, Pegaso learned by chance from AnswerNet that it would imminently be paying off the balance on the AnswerNet Note. (Mot. ¶ 13.) Indeed, AnswerNet paid off the Note the next day. (Opp. at 3.) This may have prejudiced Pegaso because the AnswerNet Note contained a Conversion Right, which granted MEM the unconditional right "to convert all of the remaining unpaid Principal Amount due, accrued and unpaid interest and any other unpaid amounts due under [the AnswerNet Note] into 50% of the issued and outstanding shares of capital stock of [AnswerNet] at the time." (Mot. ¶ 9.) By permitting (or even instigating) liquidation of the AnswerNet Note without exercising the right to convert it into stock, MEM may well have diminished the value of the AnswerNet Note as an asset subject to the Judgment. Furthermore, by causing liquidation of the AnswerNet Note, MEM put itself in the position to grab a portion of the proceeds to pay attorney's fees and line the pockets of its insiders.

Concerning "questions regarding the propriety of the transfers to Spiro Harrison," the plaintiff argues:

Pegaso also questions MEM's transfer of AnswerNet Note proceeds to Spiro Harrison for advance payment retainers as being possibly fraudulent. To establish a basis for its act of using AnswerNet Note proceeds to pay an advance payment retainer to Spiro Harrison, MEM and its counsel quote one section purportedly from Spiro Harrison's engagement letter with MEM but otherwise fail to attach the document. (Opp. at 4.) Obviously, the engagement letter would be readily available. The approach of MEM and Spiro Harrison is insufficient to prove the contents of the engagement letter. See In re Dewey & Leboeuf LLP, 493 B.R. 421, 430 (Bankr. S.D.N.Y. 2013) (denying motion for judgment on the pleadings because there was a material fact in dispute as to whether an engagement letter included an advanced payment retainer or a security retainer where neither party supplied the actual document to the court); see also Fed. R. Evid. 1002 ("[a]n original writing … is required in order to prove its content … ."). The quoted portion of the engagement letter provides, in pertinent part that "[b]efore the firm begins work on the matter, the Firm requires payment by you of an advance payment retainer," "the advanced payment retainer in the amount of $150,000.00 shall be paid by MEM," and an "'advanced payment retainer' is recognized and approved under New Jersey law … ." (Id.) Quoting only a portion of the engagement letter without attaching it proves nothing. Indeed, even assuming that accuracy and authenticity of the quoted portion of the engagement letter, numerous questions remain, including, but not limited to: when the engagement letter was executed, who is the exact client under the engagement letter, the timing of the transfer of funds vis-à-vis the beginning of Spiro Harrison's work on the matter, and whether other language in the agreement renders the retainer a "security retainer."

The plaintiff also raises "questions regarding the propriety of the transfers to Black Dolphin and Zilberstein," asserting that "[t]he only document that MEM submits to prove its indemnification obligation, the Subscription Agreement attached to MEM's Declaration in Support, is undated and unsigned and thus not a valid basis to establish a viable duty."  According to the plaintiff, "[t]here is simply no evidence that any party agreed to be bound by this unexecuted Subscription Agreement."  Moreover, "the Subscription Agreement does not itself impose an indemnification obligation.  MEM's Opposition seeks to obfuscate this fact by omitting key language from the quoted portion of the Subscription Agreement that MEM claims establishes its purported indemnification obligation."  The plaintiff contends that "MEM has edited the language of the Subscription Agreement to cause it to appear to impose an indemnification obligation, when in fact it does no such thing"; however, "[t]he full text of the unsigned and undated Subscription Agreement makes clear that if MEM has any indemnification obligation, it would arise from the 'Operating Agreement' not in the Subscription Agreement."  The plaintiff asserts that it

> will need discovery to determine, inter alia: the existence of an executed "Operating Agreement" affirmatively establishing an indemnification obligation, whether any purported indemnification obligation is applicable here, and whether Black Dolphin and Mr. Zilberstein are in fact affiliates of MEM. As the Subscription Agreement refers throughout to MEM as a partnership and Black Dolphin as the general partner of MEM, Pegaso has serious reason to doubt MEM's contention that "Black Dolphin and Zilberstein [ ] are not alter egos or otherwise liable for the Judgment against MEM based on any piercing of the corporate veil theory." (Opp. at 3; see, e.g., Decl., Ex. E at 19 ("Moriah Education Management LP is a Delaware partnership") ("The General Partner of the Company is [Black Dolphin]"). "In Delaware limited partnerships, a general partner is liable for the debts of the limited partnership." Sandvik AB v. Advent Int'l Corp., 83 F. Supp. 2d 442, 448 (D. Del. 1999), aff'd, 220 F.3d 99 (3d Cir. 2000) (citing 6 Del. C. § 17-403(b)); see also In re Physiotherapy Holdings, Inc., No. 13-12965(KG), 2017 WL 5163515, at *1 (Bankr. D. Del. Nov. 6, 2017).

The plaintiff requests that the Court: (1) "grant Pegaso's Motion for Turnover with respect to the $250,000 held in Spiro Harrison's trust account"; (2) "enter and continue the remainder of

Pegaso's Motion with respect to the $150,000 in purported advance payment retainers for a period of 60 days in order for Pegaso to conduct necessary discovery regarding the liquidation of the AnswerNet Note and the transfer of funds to Spiro Harrison"; and (3) "declare that Pegaso's acceptance of the $250,000 does not in any way waive any right, argument, or position available to Pegaso, including Pegaso's ability to contest the liquidation of the AnswerNet Note or the transfers to Spiro Harrison."

**DEBTORS' RESPONSE TO THE PLAINTIFF'S REPLY**

The debtors assert that, with respect to the issues raised in the plaintiff's reply concerning $150,000, "MEM is willing to participate in some limited, reasonable discovery regarding certain of the information sought by Pegaso in connection with the proceedings."  However, the Court should deny "the request that the remaining funds paid to [Spiro Harrison] be placed in escrow."  Spiro Harrison is not a party to this action, and "these funds, paid for the purpose of legitimately defending against Plaintiff's aggressive enforcement strategies, which include invalid, overly broad restraining notices and information subpoenas, are no longer in the control of MEM, which directed these amounts to be paid as advance payment retainers."  The debtors contend that the motion should be denied.

**PLAINTIFF'S SUR-SURREPLY**

The plaintiff asserts that its motion is not moot because "MEM proposes to pay" a portion of the proceeds, and the debtors conceded that issues exist related to the balance of the proceeds.  The plaintiff is willing to accept $250,000 "so long as this Court issues an order declaring that Pegaso's acceptance of the $250,000 does not in any way waive any right, argument, or position available to Pegaso, including Pegaso's ability to contest the liquidation of the AnswerNet Note or the transfers to Spiro Harrison."  In connection with the debtors'

8

opposition to the request to place the disputed $150,000 in escrow, the Court should reject it because an escrow is essential to protect the plaintiff's ability to obtain meaningful relief. Absent an escrow, the potential assets will be dissipated, given the debtors' opposition to the reply which "clearly indicates that the law firm will draw upon those funds to cover its fees and expenses." Moreover, "nothing would stop Spiro Harrison from drawing upon the $100,000 paid to it on behalf of Black Dolphin and Zilberstein." The plaintiff contends that New York's Rules of Professional Conduct mandate that disputed funds, such as these, "not be withdrawn until the dispute is finally resolved." N.Y.S. R.P.C. Rule1.15(b)(4)."

## DEBTORS' RESPONSE TO SUR-SURREPLY

The debtors assert that the plaintiff in its sur-surreply seeks improperly "entirely new relief," which is "the escrowing of funds paid by advance placement retainer to this Firm." According to the debtors, "MEM would consent to any request that any claims to the full amount not be waived by the acceptance of these funds, but Pegaso has not requested that it do so. MEM's consent does in fact render the Turnover Motion moot and it should therefore be denied." "MEM is also prepared to provide limited discovery into the information sought by Pegaso in connection with its collection efforts as well as the indemnification obligations triggered by the Limited Liability Company Agreement of Moriah Management, LLC (the 'Operating Agreement')." The debtors assert that New York's Rule of Professional Conduct upon which the plaintiff relies governs disputes over attorney's fees and an attorney's obligation not to commingle any disputed fees until the dispute is resolved. However, at this time, "there is no dispute over the attorney's fees paid by MEM in connection with this matter nor any claim that any fees have been improperly commingled."

**LEGAL STANDARD**

Rule 69 of the Federal Rules of Civil Procedure provides:

(1) *Money Judgment; Applicable Procedure.* A money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution-- and in proceedings supplementary to and in aid of judgment or execution--must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies.

(2) *Obtaining Discovery.* In aid of the judgment or execution, the judgment creditor or a successor in interest whose interest appears of record may obtain discovery from any person--including the judgment debtor--as provided in these rules or by the procedure of the state where the court is located.

Fed. R. Civ. P. 69(a).

Property against which a money judgment may be enforced. A money judgment may be enforced against any property which could be assigned or transferred, whether it consists of a present or future right or interest and whether or not it is vested, unless it is exempt from application to the satisfaction of the judgment. A money judgment entered upon a joint liability of two or more persons may be enforced against individual property of those persons summoned and joint property of such persons with any other persons against whom the judgment is entered.

CPLR § 5201(b).

Property in the possession of judgment debtor. Upon motion of the judgment creditor, upon notice to the judgment debtor, where it is shown that the judgment debtor is in possession or custody of money or other personal property in which he has an interest, the court shall order that the judgment debtor pay the money, or so much of it as is sufficient to satisfy the judgment, to the judgment creditor and, if the amount to be so paid is insufficient to satisfy the judgment, to deliver any other personal property, or so much of it as is of sufficient value to satisfy the judgment, to a designated sheriff. Notice of the motion shall be served on the judgment debtor in the same manner as a summons or by registered or certified mail, return receipt requested.

CPLR § 5225(a).

"Documents to effect payment or delivery.  The court may order any person to execute and deliver any document necessary to effect payment or delivery."  CPLR § 5225(c).

## APPLICATION OF LEGAL STANDARD

### *Parties' Procedural Deficiencies*

The plaintiff failed to comply with Local Civil Rule 7.1 (a)(3) of this court, requiring that

a motion include "[s]upporting affidavits and exhibits thereto containing any factual information

and portions of the record necessary for the decision of the motion," because the plaintiff did not

submit any affidavit in support of its motion and filed exhibits without any affidavit identifying

and explaining them.  The plaintiff also combined improperly in one document what appears to

be a notice of motion with its memorandum of law.  See Local Civil Rule 7.1(a).   Similarly, the

plaintiff failed to comply with Local Civil Rule 7.1 of this court in reply because exhibits are

attached to its reply memorandum of law without any affidavit.

The debtors failed to comply with Local Civil Rule 7.1(b)'s requirement that "an

opposing party who seeks relief that goes beyond the denial of the motion shall comply as well

with Local Civil Rule 7.1(a)(1) above" because, in the "Conclusion" section of their

memorandum of law, they seek relief that goes beyond the denial of the motion request without

complying with Local Civil Rule 7.1(a)(1).

Notwithstanding the parties' procedural deficiencies, the Court is mindful of Rule 1 of

the Federal Rules of Civil Procedure and "a strong 'preference for resolving disputes on the

merits,'" New York v. Green, 420 F.3d 99, 104 (2d Cir. 2005) (citation omitted), and will

address the merits of the plaintiff's motion.  However, the parties are on notice that any future

failure to comply with the applicable rules may result in denial of requested relief with prejudice.

### *Merits of the Plaintiff's Motion*

The plaintiff asserted in Count I of the complaint breach of the 2016 promissory note

against the borrower, Moriah Education Management LP, "a Delaware Limited Partnership," the

entity that signed the 2016 promissory note promising to repay the lender, the plaintiff, the principal sum of $1,900,000 with interest.  The 2016 promissory note was signed by the borrower's Managing Partner, "Gregory Tsvi Zilberstein."  The answer to the complaint was filed by "Moriah Education Management LLC (incorrectly identified as Moriah Education Management LP)" and Moriah Software Management LP.  Despite asserting in the answer that "Moriah Education Management LLC" was "incorrectly identified as Moriah Education Management LP," two entities, Moriah Education Management LP and Moriah Education Management LLC, stipulated liability to the plaintiff on Count I, breach of the 2016 promissory note by the borrower Moriah Education Management LP, and the judgement was entered finding that "Moriah Education Management, LP and Moriah Education Management, LLC (collectively, 'Debtors') are, jointly and severally, indebted to Pegaso Development in the amount of $2,758,567.13" and "any interest that has accrued and will accrue each day following March 17, 2020."  Docket Entry No. 46.  Contrary to the assertion in the answer that "Moriah Education Management LLC" was "incorrectly identified as Moriah Education Management LP" in the complaint, it is clear from the "Stipulated Judgment as to Count I" that: (a) the plaintiff identified correctly Moriah Education Management, LP as the entity that signed and breached the 2016 promissory note; and (b) Moriah Education Management, LP and Moriah Education Management, LLC represented themselves as separate entities jointly and severally liable to the plaintiff on Count I, breach of the 2016 promissory note, as found in the judgment.

Given that the judgment in favor of the plaintiff was entered against two entities, it is not clear why the debtors' counsel Harrison styled the document he signed as "Defendant Moriah Education Management LP's Memorandum of Law in Opposition to Plaintiff's Motion for Turnover Order," but asserted in the first sentence of that document that "Defendant Moriah

Education Management LP and Moriah Education Management LLC (collectively 'MEM' or
'Defendant') respectfully submits [sic] this memorandum of law in opposition to the motion."
The debtors and their counsel use the acronym "MEM" to refer interchangeably to both entities
as a single "defendant," as well as each of the two entities separately, making their factual
assertions and arguments ambiguous and misleading.  For example, Harrison asserts in the
memorandum of law he prepared and signed that: (a) the motion seeks the turnover of a Senior
Secured Convertible Note given by AnswerNet "to MEM in December 2017"; (b) AnswerNet
"has paid off the outstanding principal balance of the Note of approximately $400,000"; (c)
"MEM stands prepared to transfer $250,000 of those funds to Pegaso toward payment of the
Judgment"; (d) the remaining $150,000 "received on the Note has been used to pay retainer fees
of $50,000 to Spiro Harrison, the undersigned counsel, for MEM, its general partner Black
Dolphin Capital Management, LLC" and "Black Dolphin's member Greg Zilberstein"; and (e)
"[t]he retainers on behalf of Black Dolphin and Zilberstein are indemnified by MEM pursuant to
MEM's agreement with its investors."  Borrower AnswerNet's December 15, 2017 Senior
Secured Convertible Promissory Note was made to "Moriah Education Management LLC, a
Delaware limited liability company (together with its successors and assigns, the 'Lender')," not
Moriah Education Management LP.  No evidence was presented to the Court showing: (i) that
any entity is Moriah Management LLC's successor and assignee; and (ii) the legal relationship,
if any, between Moriah Education Management LP and Moriah Education Management LLC.
Thus, conflating the two entities into one when it suits the debtors and their counsel is
misleading and creates ambiguity.  Moreover, Harrison did not submit any retainer agreement,
and his quotation from the purported retainer agreement in which the acronym "MEM" is used
without any evidence identifying the entity for which the acronym stands, creates only more

ambiguity, is misleading and makes Harrison's uncorroborated assertions in his declaration suspect.  Similarly, Harrison asserts that Exhibit E to his declaration is "the Subscription Agreement" and "MEM paid retainer fees on behalf of Black Diamond and Zilberstein pursuant to its indemnification obligations as agreed upon with MEM's investors."  However, Exhibit E indicates that it is a document directed "TO: Moriah Education Management LP," not Moriah Education Management LLC.  Thus, the debtors' and their counsel's use of the acronym "MEM" to refer to the debtors collectively, as well as each of the two entities separately, is improper, misleading, ambiguous and the motivation for such use in their submissions, including their counsel's declaration, is suspect.

Exhibit E to Harrison's declaration is an undated and unsigned document purporting to be "the Subscription Agreement," "signed by each investor," and to contain the indemnification term, which Harrison quotes without identifying any part of Exhibit E that contains the quoted language.  Harrison is not employed by the debtors and he does not identify the source of his knowledge concerning the undated and unsigned Exhibit E.  The undated and unsigned Exhibit E to Harrison's declaration is rejected as inadmissible evidence and any arguments and factual assertions based on it are rejected as baseless.

It appears from the parties' submissions that the debtors are in possession of $250,000, partial proceeds from the total of $400,000 that the debtors received from AnswerNet in connection with the December 15, 2017 Senior Secured Convertible Promissory Note.  The debtors do not contest the turnover of $250,000, held in Spiro Harrison's trust account, in partial satisfaction of the judgment, and the plaintiff requests that motion be granted with respect to the amount of $250,000.  However, the plaintiff in its reply seeks additional relief, namely, a declaration that its acceptance of the partial payment "does not waive any right, argument, or

position available" to it in connection with the liquidation of the AnswerNet note or the transfers to Spiro Harrison. The debtors assert that they "will agree that any claim to the full amount is not waived by acceptance of" $250,000.

The additional relief the plaintiff seeks in its reply appears to be due to: (a) the payment by AnswerNet of $400,000 to the debtors one day after the plaintiff made the instant motion; and (b) the debtors' assertions in their opposition to the motion that they are willing to pay $250,000, in partial satisfaction of the judgment, but not $150,000, which they assert was properly withheld to pay counsel's advanced retainer fees. The change in circumstances following the filing of the plaintiff's motion resulted in a controversy concerning $400,000 received in connection with AnswerNet's December 15, 2017 Senior Secured Convertible Promissory Note. Although the debtors do not contest that $250,000 is available to the plaintiff as the debtors' partial satisfaction of the judgment, and the plaintiff seeks that the motion with respect to $250,000 be granted, the parties dispute the remaining $150,000, in connection with which the plaintiff seeks continuance of the motion "for a period of 60 days in order for Pegaso to conduct necessary discovery regarding the liquidation of the AnswerNet Note and the transfer of funds to Spiro Harrison." The debtors assert that they are "willing to participate in some limited, reasonable discovery regarding certain of the information sought by Pegaso in connection with these proceedings," although they oppose the request to place in escrow $150,000 paid to the debtors' counsel.

The plaintiffs' request to grant the motion, in part, with respect to $250,000, is in tension with its requests for a: (i) declaration that the acceptance of $250,000 does not wave its rights concerning any challenge to the liquidation of the AnswerNet note or the transfers to Spiro Harrison; and (ii) continuance "for a period of 60 days in order for Pegaso to conduct necessary

discovery regarding the liquidation of the AnswerNet Note and the transfer of funds to Spiro

Harrison." The debtors' request to deny the motion as moot is in tension with their:

(a) willingness "to participate in some limited, reasonable discovery regarding certain of the

information sought by Pegaso in connection with these proceedings"; and (b) opposition to the

plaintiff's request to place in escrow $150,000 paid to the debtors' counsel. The Court finds that,

under the circumstances of this case and to aid the Court in resolving the parties' dispute related

to the instant motion, allowing the parties an opportunity to conduct discovery in connection

with "the liquidation of the AnswerNet Note and the transfer of funds to Spiro Harrison" is

warranted.

## CONCLUSION

For the foregoing reasons: (1) the $400,000, received in connection with AnswerNet's

December 15, 2017 Senior Secured Convertible Promissory Note, shall be held in an escrow

account until the resolution of the instant motion; (2) the parties shall have 60 days from the date

of this order to conduct discovery limited to "the liquidation of the AnswerNet Note and the

transfer of funds to Spiro Harrison"; (3) the parties shall file a joint status letter no later than

seven days after the expiration of the limited discovery permitted by this order; and (4) the

resolution of the plaintiff's motion for a turnover order, Docket Entry No. 48, is held in abeyance

until further notice. The parties are on notice that any future failure to comply with applicable

rules may result in the denial of requested relief with prejudice.

Dated: New York, New York                          SO ORDERED:
            September 17, 2020

_Kevin Nathaniel Fox_
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE