```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
PEGASO DEVELOPMENT INC.,         :
                   Plaintiff,    :
                                                    MEMORANDUM AND ORDER
              v.                 :
                                                    19-CV-7787 (AT) (KNF)
MORIAH EDUCATION MANAGEMENT      :
LP AND MORIAH SOFTWARE
MANAGEMENT LP,                   :

                   Defendants.   :
------------------------------------------------------X
```
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

A judgment was entered in favor of the plaintiff and against Moriah Education Management LP and Moriah Education Management, LLC "(collectively, 'Debtors')," "as to Count I of the complaint," finding the debtors liable to the plaintiff, "jointly and severally, in the amount of $2,758,567.13 plus any interest that has accrued and will accrue each day following March 17, 2020." Docket Entry No. 46. Before the Court is a motion by "Moriah Education Management LLC ['the movant'] . . . for an Order pursuant to Federal Rule of Civil Procedure 69 and New York Civil Practice Law and Rules § 5240 quashing the subpoena to JPMorgan." The plaintiff opposes the motion.

## MOVANT'S CONTENTIONS

The movant argues that: (1) it "has standing to quash the subpoena"; (2) "the subpoena should be quashed because it is overbroad and seeks information that is not relevant to plaintiff's efforts to enforce its judgment"; (3) "the subpoena should be quashed because it seeks highly confidential information concerning the identities of [the movant's] investors"; and (4) the Court "should issue a protective order if it denies the motion to quash." Concerning standing, the movant asserts:

1

> The Subpoena issued by Pegaso to third-party JP Morgan seeks sensitive banking and financial information for [the movant]. It is well-established that a party has standing to challenge a subpoena to its bank for its financial affairs. *See, e.g., Solow v. Conseco, Inc.*, 2008 U.S. Dist. LEXIS 4277, at *8-9 (S.D.N.Y. Jan. 18, 2008) (collecting cases holding that a party has standing to quash a subpoena seeking its private financial information); *Sierra Rutile Ltd. v. Katz*, 1994 U.S. Dist. LEXIS 6188, at *6-7 (S.D.N.Y. May 11, 1994) (finding a party "ha[s] a sufficient privacy interest in the confidentiality of [bank] records pertaining to their personal financial affairs so as to give them standing to challenge the subpoenas" (citing cases)). Accordingly, because the Subpoena seeks to obtain [the movant's] private financial information, [the movant] has standing to challenge the Subpoena.

The movant contends that the plaintiff "seeks banking records that date back to over three years prior to the filing of the very lawsuit that resulted in the Judgment, and over four years from the Judgment itself," and "[t]hese bank records contain transactional information that has absolutely nothing to do with [the movant's] current assets that might be subject to execution." Thus, the subpoena is overbroad. The movant contends that, "[w]hile [it] has not provided actual bank statements to Pegaso to date, Pegaso has not requested such information from [the movant]," and the plaintiff's conduct amounts to abuse of procedural tools to harass the movant.

The movant asserts that the subpoena seeks improperly its "highly confidential trade secret information, *i.e.*, the identities of its investors," which have no bearing on the plaintiff's collection efforts. According to the movant: (i) it "kept the identities of its investors confidential, and they were known only to [the movant's] sole and managing member, Greg Zilberstein ['Zilberstein']"; (ii) "[t]he identity of [the movant's] investors is kept confidential because [the movant's] investors expect that their identities and investment information in [the movant] will be kept private by [the movant]"; (iii) "[t]he confidentiality of [the movant's] investor lists also benefits [the movant] as it prevents these lists from getting in the hands of competitors who may solicit those investors or harass them"; (iv) the movant "expended substantial resources and undertook years of effort in establishing the relationships necessary to

prompt an investor to entrust its monies with [the movant]"; and (v) the movant's "investors also have a keen interest in remaining private to avoid unwanted solicitation and/or harassment."

The movant requests, in the event the Court finds that the subpoena should not be quashed, "that the Court enter a protective order pursuant to CPLR § 5240 requiring that any and all documents produced in response to the Subpoena should first be produced to [the movant]" so that the movant can make "necessary redactions" to them before they are produced to the plaintiff. The movant maintains that "a protective order would prevent the very real risk that confidential information will be used for improper purposes."

In support of the motion, the movant submitted declarations by Zilberstein, the movant's sole member and manager, and the movant's counsel, Michael J. Sullivan ("Sullivan"), with Exhibit A, the subpoena the plaintiff served on JPMorgan, dated July 15, 2020, Exhibit B, "an email chain between the parties' counsel spanning July 23, 2020 to August 4, 2020," and Exhibit C, the movant's "objections and responses to Plaintiff's information subpoena, dated June 26, 2020." Zilberstein states that the movant "held a bank account at JPMorgan beginning in 2016," and "[t]he account statements for the JPMorgan bank account contain [the movant's] confidential information, including the identities of [the movant's] various investors." Zilberstein states that the investors' identities are known only to him, and the movant "expended substantial resources and undertook years of effort in establishing the relationships necessary to prompt its investors to entrust its monies with [the movant]."

The plaintiff's subpoena to JPMorgan, dated July 15, 2020, "pursuant to New York State Civil Practice Law and Rules ('CPLR') 5223 and 5224 as applied through Fed. R. Civ. P. 69," seeks "the books, papers, and records described in Schedule A annexed hereto together with all other books, papers and records in your possession, custody or control which have or may

3

contain information concerning property, income or other means of the judgment debtor relevant to satisfy the judgment, whether those materials are within or without the state." Schedule A indicates that the time period for each document request is "from January 1, 2016 through the date of production" and the document requests are as follows:

> 1. All Bank Account Records (including loans) relating to any Bank Account in the name of or relating to Judgment Debtors, whether within or outside the United States.
> 2. All Documents relating to the ownership of, control of, or interest by Judgment Debtors in any stocks, bonds, securities, certificates of deposit, commercial paper, mutual funds, commodity accounts, options or futures accounts, and/or other investments, funds, trusts, businesses, companies, entities or assets of any kind whether within or outside the United States.
> 3. All Documents relating to loans involving Judgment Debtors, including without limitation loan applications (including corporate or business records to support the loan application), financial statements, balance sheets, loan agreements, loan issuances, loan repayments, or actions taken upon any loan.
> 4. Any financial statement in the name of any of the Judgment Debtors.
> 5. All other Documents that may contain information concerning the property, assets or income of, or indebtedness due to or from, Judgment Debtors.
> 6. Any Communications between Respondent and the Judgment Debtors, Black Dolphin, and/or Zilberstein.

### PLAINTIFF'S CONTENTIONS

The plaintiff argues that the motion to quash should be denied because: (1) the movant "lacks standing to quash a third-party subpoena" on the basis of "overbreadth and relevance grounds" and "as a corporate entity" the movant "lacks standing to claim a 'privacy' interest in banking records"; (2) "the Subpoena seeks entirely permissible post-judgment discovery"; and (3) the movant's "contention that the Subpoena seeks trade secret information is specious." The plaintiff contends that, unlike individuals, "companies generally do not have a 'privacy' interest in their financial documents and therefore lack standing to object to subpoenas served on non-parties on this basis." Since the subpoena seeks financial records from a corporate entity, not an individual, the movant "lacks standing to assert its supposed privacy interest."

The plaintiff asserts that the subpoena should be upheld because the plaintiff seeks to determine what assets the movant has at JPMorgan, and the movant does not dispute the relevancy of the bank documents because it asserts that it has provided information about its account balances for any bank accounts in response to the plaintiff's information subpoena. However, the plaintiff is entitled to verify the movant's response with documents from JPMorgan. The plaintiff maintains that it is justified in seeking "historical financial information" regarding the movant's accounts at JPMorgan because post-judgment discovery is not limited to a judgment debtor's current assets. Accordingly, the plaintiff's "request for discovery extending eight months prior to the promissory note transaction that gave rise to the Judgment in this case is proper." Moreover, historical documents are necessary to determine whether the movant transferred improperly or concealed assets from the plaintiff and "to investigate the veracity of information [the movant] has provided in response to the information subpoena Pegaso served on [the movant]." In response to the information subpoena, the movant stated that it has "received no income since July 2016," but the plaintiff "received payments from [the movant] on the promissory note at issue in the Judgment after July 2016 and into 2017." Thus, the movant "must have had some assets coming in during that time," and the subpoenaed "bank records will help clarify when and where [the movant's] assets were transferred and will help determine whether subsequent transfers were legitimate."

The plaintiff contends that the movant failed to make a minimal showing that the subpoena seeks trade secrets, as Zilberstein's improper conclusory and self-serving allegations in his declaration are the only support the movant proffered. Furthermore, Zilberstein's allegation that the movant's JPMorgan bank account contains the identities of its investors appears to be

5

contradictory. The movant claims that it is an LLC and Zilberstein's declaration states that he is the movant's "sole and managing member." The plaintiff asserts:

> Given that it is highly unusual for an LLC to have investors who are not members, [the movant's] representations appear to be in conflict, that is, the movant wishes to protect the identity of its investors (members) but claims that Zilberstein is the only member. If [the movant] is referring to its former investors, then this is a meaningful difference. As a matter of law, the identity of [the movant's] former investors is not a trade secret.

The plaintiff asserts that the fact that Zilberstein kept the information in the bank records from others does not confer trade-secret status, and the movant's concern that the information sought may fall into the hands of competitors is irrelevant because the movant does not allege that the plaintiff is its competitor. Additionally, the movant's "failure to provide an iota of information regarding what efforts or costs it expended to acquire the identities of [the movant's] purported investors further dooms its trade secret claim." In the event the Court finds that entering a protective order is appropriate, the plaintiff is willing to enter into a protective order that would maintain the identities of the alleged investors confidential.

## MOVANT'S REPLY

The movant asserts that it has standing to object to the subpoena on the grounds of relevance and, even if it does not, "the Court may still quash the Subpoena in its discretion by exercising its 'power, without any motions by the parties, to control and order discovery,'" especially here, where "the discovery sought to be obtained from the non-party can be obtained directly from the party to the lawsuit." The movant maintains that it does not "argue that the Subpoena to JPMorgan is improper based on [the movant's] constitutional right to privacy, but rather because the Subpoena seeks [the movant's] protectable trade secrets," namely, identities of its investors, which under New York Law "constitute trade secret information." According to

the movant, "courts have repeatedly found that corporations and LLCs have standing to quash subpoenas seeking financial records based on privacy interests."

The movant contends that the subpoena to JPMorgan "is the definition of a fishing expedition," and the plaintiff does not even suggest that the movant has ever made any fraudulent transfer or concealed any assets. Thus, the plaintiff's "failure to identify any basis whatsoever suggesting that the subpoenaed records will be relevant to its judgment enforcement efforts mandates the quashing of the Subpoena." Although the plaintiff asserts that Zilberstein's declaration is insufficient to establish that the identities of the movant's investors constitute trade secrets, it does not provide any authority that Zilberstein's declaration does not meet the minimal burden imposed on the movant to show that trade secrets would be revealed. The movant contends that it "would agree to a protective order providing that the identities of [the movant's] investors be redacted from the documents produced by JPMorgan" and, "[g]iven the breakdown in trust between Pegaso and [the movant] generated by the present lawsuit, [the movant] is not willing to disclose its investor identities to Pegaso."

## LEGAL STANDARD

"In aid of the judgment or execution, the judgment creditor or a successor in interest whose interest appears of record may obtain discovery from any person--including the judgment debtor--as provided in these rules or by the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(2). "[B]road post-judgment discovery in aid of execution is the norm in federal and New York state courts. . . . It is not uncommon to seek asset discovery from third parties, including banks, that possess information pertaining to the judgment debtor's assets." EM Ltd. v. Republic of Argentina, 695 F.3d 201, 207 (2d Cir. 2012), aff'd sub nom. Republic of Argentina v. NML Capital, Ltd., 573 U.S. 134, 134 S. Ct. 2250, 189 L. Ed. 2d 234 (2014). "In

7

the absence of a claim of privilege a party usually does not have standing to object to a subpoena directed to a non-party witness." Langford v. Chrysler Motors Corp., 513 F.2d 1121, 1126 (2d Cir. 1975). "A party lacks standing to challenge subpoenas issued to non-parties on the grounds of relevancy or undue burden." Universitas Educ., LLC v. Nova Group, Inc., No. 11 Civ. 1590, 2013 WL 57892, at *5 (S.D.N.Y. Jan. 4, 2013).

> *Quashing or Modifying a Subpoena.*
> (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
> (i) fails to allow a reasonable time to comply;
> (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
> (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
> (iv) subjects a person to undue burden.
> (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
> (i) disclosing a trade secret or other confidential research, development, or commercial information; or
> (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
> (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
> (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
> (ii) ensures that the subpoenaed person will be reasonably compensated.

Fed. R. Civ. P. 45(d)(3).

"A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending." Fed. R. Civ. P. 26 (c)(1). "The burden of persuasion in a motion to quash a subpoena and for a protective order is borne by the movant." Jones v. Hirschfeld, 219 F.R.D. 71, 74-75 (S.D.N.Y. 2003). A determination to grant or deny a motion for a protective order or a motion to quash a subpoena is discretionary. See Galella v. Onassis,

8

487 F.2d 986, 997 (2d Cir. 1973); In re Subpoena Issued to Dennis Friedman, 350 F.3d 65, 68 (2d Cir. 2003).

## APPLICATION OF LEGAL STANDARD

The movant does not assert any privilege as a basis for its standing to object to the plaintiff's subpoena on nonparty JPMorgan. Although, in its reply, the movant contends that "courts have repeatedly found that corporations and LLCs have standing to quash subpoenas seeking financial records based on privacy interests," it maintains that it does not "argue that the Subpoena to JPMorgan is improper based on [the movant's] constitutional right to privacy, but rather because the Subpoena seeks [the movant's] protectable trade secrets," namely, identities of its investors, which under New York Law "constitute trade secret information." Thus, the movant does not assert any privilege or privacy right as a basis for its standing to object to the plaintiff's subpoena to nonparty JPMorgan.

The movant asserts that its right to "protectable trade secrets," namely, identities of its investors, confers on it standing to object to the plaintiff's subpoena to nonparty JPMorgan. However, the movant does not make citation to any binding authority: (a) identifying the source of the right to "protectable trade secrets"; and (b) supporting its proposition that its purported right to "protectable trade secrets" is recognized as a proper basis on which standing may be asserted to object to the plaintiff's subpoena to nonparty JPMorgan. The Court finds that the movant lacks standing to object to the JPMorgan subpoena.

## CONCLUSION

The movant's motion to quash the plaintiff's subpoena on JPMorgan, Docket Entry No. 64, is denied for lack of standing.

Dated:  New York, New York
       October 28, 2020

SO ORDERED:

_Kevin Nathaniel Fox_
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE