**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X
PEGASO DEVELOPMENT INC.,

                                     Plaintiff,

            -against-

MORIAH EDUCATION MANAGEMENT LP
AND MORIAH SOFTWARE MANAGEMENT
LP,

                                 Defendants.
----------------------------------------------------------------X

                               <u>ORDER</u>

                        **19-CV-7787 (AT) (JW)**

**JENNIFER E. WILLIS, United States Magistrate Judge:**

       Plaintiff Pegaso Development, Inc. brings this action against Defendants Moriah Education Management Limited Partnership ("MEM LP") and Moriah Software Management Limited Partnership ("MSM LP") for breach of contract on two promissory notes.  Defendants' counsel, David Harrison, and his law firm, Spiro Harrison ("SH"), were asked to submit documents over which they claimed privilege to the Court for in camera review.  In accordance with the order, SH submitted documents which they grouped into five exhibits.  Documents from Exhibits 2, 3, 4, and 5 are found to contain privileged materials and therefore the objection to filing them publicly is SUSTAINED.  Documents in Exhibit 1 were not found to be privileged and therefore the objection to their public filing is OVERRULED.

## <u>BACKGROUND</u>

       On August 20, 2019, Plaintiff filed a complaint in federal court with a claim based on diversity jurisdiction.  Dkt. No. 6 at 2.  They identified the defendants as MEM LP and MSM LP.  <u>Id</u> at 1.  In their Answer, Defendants stated that Plaintiff had incorrectly identified Moriah Education Management Limited Liability Company

("MEM LLC") as MEM LP.  Dkt. No. 24.  The parties then stipulated to judgment against both MEM LP and MEM LLC, in the amount of $2,758,567.13.  Dkt. No. 46.  Following the entry of judgment, non-parties Greg Zilberstein and Black Dolphin Capital Management, LLC, filed a motion to vacate restraining notices served on them by Plaintiff.  Dkt. No. 60.  Defendants also filed a motion to quash Plaintiff's post-judgment subpoena on non-party JP Morgan Chase Bank, N.A.  Dkt. No. 64.

Magistrate Judge Fox, on September 3, 2020, denied the motion to vacate as moot.  Dkt. No. 71.  Judge Fox then noted that in earlier filings with the Court, David Harrison, who had become counsel after the judgement, claimed to represent MEM LP. Dkt. No. 73 at 2.  However, in his memoranda of law in support of the two motions to quash and vacate, Harrison claimed that MEM LP was misidentified as a defendant in the initial complaint and did not exist.  Dkt. No. 64.  Therefore, Judge Fox concluded that Harrison "represents an entity he asserts does not exist."  Dkt. No. 73 at 2.  As a result, Judge Fox directed Harrison to "show cause by affidavit supported by admissible evidence why the[se] … representations … do not violate [Rule] 11(b) of the Federal Rules of Civil procedure."  Id. at 3.

On September 9, 2020, Harrison filed the requested affidavit.  Dkt. No. 75.  On December 15, 2020, Judge Fox entered an order (the "Production Order") directing Harrison to produce twelve categories of documents to provide evidentiary support for statements made in Harrison's affidavit.  Dkt. No. 110.  Harrison filed timely objections to the Production Order on December 29, 2020.  Dkt. No. 111.  On May 5, 2022, District Judge Analisa Torres overruled the objections except to the extent that

the Production Order required the public filing of any privileged documents.  Dkt. No.

117.  Judge Torres then directed Harrison to produce any documents for which he

claimed privilege to this Court for an *in camera* review.  Id. at 7.  On May 19, 2022,

Harrison provided the Court with five exhibits of documents responsive to the

Production Order over which it asserts the attorney-client privilege and/or the

attorney work-product privilege.  See Dkt. No. 119.

## LEGAL STANDARD

### A. Attorney-Client Privilege

"[I]n a civil case, state law governs privilege regarding a claim or defense for

which state law supplies the rule of decision."  F.R.E. 501; see also Allied Irish Banks

v. Bank of America, N.A., 240 F.R.D. 96, 102 (S.D.N.Y. 2007) ("Because this Court's

subject matter jurisdiction is based upon diversity, state law provides the rule of

decision concerning the claim of attorney-client privilege.")  As stated previously, the

claim in this case was based on diversity jurisdiction.  Therefore, state law governs

attorney-client privilege.  Accordingly, under New York law, the elements for the

privilege are that "the information at issue was a communication between client and

counsel or his employee, that it was intended to be and was in fact kept confidential,

and that it was made in order to assist in obtaining or providing legal advice or

services to the client."  Bowne of New York City, Inc. v. AmBase Corp., 150 F.R.D.

465, 470-71 (S.D.N.Y. 1993) (collecting New York cases to that effect).  This privilege

"exists to protect not only the giving of professional advice to those who can act on it

but also the giving of information to the lawyer to enable him to give sound and

informed advice." Upjohn Co. v. United States, 449 U.S. 383, 390 (1981).  The communications in question must be "primarily or predominantly of a legal character." Allied Irish Banks, 240 F.R.D. at 102 (quoting Rossi v. Blue Cross & Blue Shield of Greater New York, 73 N.Y.2d 588, 594 (1989)).

## B. **Work Product Doctrine**

In a diversity action in federal court, "federal law governs the applicability of the work product doctrine." Allied Irish Banks, 240 F.R.D. at 105.  As stated in the Federal Rules, a party is not entitled to obtain discovery of "documents and tangible things . . .  prepared in anticipation of litigation or for trial by or for another party or its representative" unless "the party shows that it has substantial need for the materials  .  .  .  and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A).  This doctrine "is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy with an eye towards litigation, free from unnecessary intrusion by his adversaries." United States v. Adlman, 134 F.3d 1194, 1196 (2d Cir.1998) (internal quotations omitted).  The work product doctrine protects both factual and opinion work product, however the latter "receive[s] special protection not accorded to factual material." Id. at 1197.

## DISCUSSION

Harrison produced the documents at issue in the form of five exhibits.  Each of those exhibits is addressed in turn, below, and evaluated for the presence of either the attorney-client privilege or the work-product doctrine.

4

## I.  **Exhibit 1**

The first exhibit that Harrison provided contains two engagement letters between SH and the Defendants that are responsive to Categories 1-4 of the Production Order.[1]  Harrison asserts that these letters are protected by attorney-client privilege because portions of the engagement letters include communications regarding the treatment of disputed funds within the case.  Harrison cites caselaw in support of the proposition that "correspondence, bills, ledgers, statements, and time records" that "reveal the motive of the client in seeking representation, litigation strategy, or the specific nature of the services provided . . . fall within the [attorney-client] privilege."  Diversified Grp., Inc. v. Daugerdas, 304 F. Supp. 2d 507, 514 (S.D.N.Y. 2003) (citing Clarke v. Am. Commerce Nat'l Bank, 974 F.2d 127, 129 (9th Cir. 1992)).

However, nothing within the engagement letter pertains to the litigation strategy or the motive of the client in seeking that representation.  The nature of the services is not described beyond the description of the matter for which the firm is being retained.  In Diversified, cited by Harrison, the Court found that a title of legal

---

[1] Categories 1-4 of the Production Order included "(1) all unredacted retainer agreements based on which he entered an appearance, on June 16, 2020, 'as counsel for defendants Moriah Education Management LP and Moriah Software Management LP,' [Dkt. No.] 50, in this action; (2) all unredacted retainer agreements referenced by Harrison in paragraphs 5 and 6 of his June 22, 2020 declaration, [Dkt. No.] 54; (3) all unredacted retainer agreements based on which Harrison represented in paragraph 1 of his August 3, 2020 declaration that he is 'counsel for defendant Moriah Education Management LP and Moriah Education Management LLC' and 'non-parties Greg Zilberstein and Black Dolphin Capital Management, LLC,' [Dkt. No.] 63; (4) all unredacted retainer agreements by which '[o]n June 4, 2020, my law firm, Spiro Harrison, was engaged by Moriah Education Management, LP,' 'Black Dolphin Capital Management, LLC' and 'Greg Zilberstein to represent them in connection with responses to discovery and other proceedings related to a judgment obtained by Pegaso development, LLC' in this action, as stated in paragraph 3 of Harrison's September 9, 2020 affidavit, [Dkt. No.] 75." Dkt. No. 110.

5

service such as "For Professional Legal Services Rendered re: UPC Transaction" does not qualify as a nature of the legal services but instead merely identifies the transaction.  Id. 304 F. Supp. 2d, at 514.  Similarly, the engagement letter contains only a general description that it is for a "response to information subpoenas."  This is merely identifying for which matter the engagement is made, and does not describe what specific legal services would be provided.

Furthermore, as described in the order by Judge Torres on May 5, 2020, Defendants' counsel has previously quoted from the engagement letter in a declaration opposing a motion for a turnover order.  Dkt. No. 117 (citing to Dkt. Nos. 48 and 54 wherein the engagement letter was mentioned).  It is well settled that "a party cannot partially disclose privileged communications or affirmatively rely on privileged communications to support its claim or defense and then shield the underlying communications from scrutiny." In re Grand Jury proceedings, 219 F.3d 175, 182 (2d Cir. 2000).  Having cited to the engagement letter in previous court filings, Harrison and SH cannot now claim that they are privileged.

Lastly, Harrison also claims that the letters are shielded by the work product doctrine but provides no rationale to sustain that argument.  "The party asserting work product protection bears the burden of establishing its applicability to the case at hand." Allied Irish Banks, 240 F.R.D. at 105. Harrison has failed to meet that burden.

The Court finds that the documents contained in Exhibit 1 are not privileged.

## II.  Exhibit 2

The second exhibit Harrison provided contains a single document that is responsive to Category No. 6 of the Production Order.[2]  The document is an email containing notes regarding a letter received by Plaintiff's counsel, as well as a draft response to that letter.  Harrison asserts that this is protected under the work product doctrine.  The doctrine protects "documents and tangible things . . .  prepared in anticipation of litigation or for trial by or for another party or its representative." Fed.R.Civ.P. 26(b)(3).  The email is certainly a document.  It was prepared in anticipation of litigation, as it concerns what was at the time ongoing motion practice in this matter. The doctrine specifically gives "special protection" to opinion work over factual work in order to protect the mental process of an attorney. Adlman, 134 F.3d at 1197.  The notes constitute mental impressions and opinion work, and as such are protected.

The court finds that the document in Exhibit 2 is privileged under the attorney work product doctrine and should not be filed publicly on the docket.

## III.  Exhibit 3, 4 and 5

Exhibits 3, 4 and 5 contain documents that are responsive to Category Nos. 5, 8, and 12 of the Production Order.[3]  These consist of emails sent by and to multiple

---

[2] Category 6 of the Production Order included "written documents establishing that '[i]n or around the middle of July 2020, as part of our continuing review of the relationship between MEM LP and MEM LLC, our firm searched for corporate records relating to the entities on the Delaware Division of Corporations registry,' as asserted in paragraph 6 of Harrison's September 9, 2020 affidavit, [Dkt. No.] 75." Dkt. No. 110.

[3] Categories 5, 8 and 12 of the Production Order include "(5) the dates of communications and all written communications referenced in paragraph 4 of Harrison's September 9, 2020 affidavit, [Dkt. No.] 75. [...] (8) [W]ritten documentation demonstrating '[o]ur investigation into the issue,' referenced in paragraph 6 of Harrison's September 9, 2020 affidavit, [Dkt. No.] 75. [...] (12) [W]ritten documents

parties who were described as follows: Greg Zilberstein, the client; Harrison and Michael Sullivan, attorneys for SH, current counsel for Zilberstein; and Kay Gordon and Alan Kaufman, attorneys for Nelson Mullins, former counsel for Zilberstein.

The first element to meet the privilege is that it must be "communication between client and counsel or his employee." Bowne, 150 F.R.D. at 470. "[A]ttorney-client privilege covers communications between attorney and client, as well as between two attorneys who represent the client." Id. at 490. It is clear that the communications in question were between the current attorneys, the former attorneys, and the client. Communications between past and present counsel are privileged as they both owe a continuous duty to the client. Although there were emails with former attorneys, the privilege is not negated as attorneys owe "a duty of continuing loyalty to [their] former client." Arifi v. de Transport du Cocher, Inc., 290 F. Supp. 2d 344, 348 (E.D.N.Y. 2003) (internal quotations omitted). The element requiring that the at-issue communications be between a client and their counsel is therefore satisfied.

The second element of attorney-client privilege is that of an implied or actual confidentiality. Emails have been found to be confidential if they contain legal advice or information. See Egiazaryan v. Zalmayev, 290 F.R.D. 421, 430 (S.D.N.Y. 2013). The Court's *in camera* review of the emails in question revealed that they did in fact

---

demonstrating (i) '[o]ur investigation of the underlying facts' and (ii) that 'it has revealed that there is no legal entity MEM LP,' as asserted in paragraph 16 of Harrison's September 9, 2020 affidavit, [Dkt. No.] 75." Dkt. No. 110.

contain legal advice and information, and therefore they are found to meet the confidentiality requirement of the privilege.

Third, the communication must serve the purpose of "assist[ing] in obtaining or providing legal advice or services to client." Bowne, 150 F.R.D. at 470. The emails primarily reflect Harrison's inquest into the nature of MEM LP from the client and former attorneys. They also contain legal advice regarding motions given to the client and to the court. All the information that was communicated was of legal character and pertained to ongoing litigation. This satisfies the third prong of the standard for attorney-client privilege. All the elements are therefore satisfied.

The court finds that the documents in Exhibit 3, 4, and 5 are protected by the attorney-client privilege and should not be filed publicly on the docket.

## CONCLUSION

For the aforesaid reasons, the objections based on privilege that SH has provided for documents in Exhibits 2, 3, 4, and 5 are SUSTAINED. However, Exhibit 1 contains no privileged material and therefore the objection to the public filing of that document is OVERRULED.

SO ORDERED.

DATED:    New York, New York
          July 11, 2022

*Jennifer E. Willis*

JENNIFER E. WILLIS
United States Magistrate Judge